**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3843
_____

PETER FAN; ROYAL ESTATE MANAGEMENT LLC;
FREMONT HOTEL INC, Individually and on behalf of all
others similarly situated,
 Appellants

v.

STONEMOR PARTNERS LP; STONEMOR GP LLC;
STONEMOR GP HOLDINGS LLC;
AMERICAN CEMETERIES INFRASTRUCTURE
INVESTORS LLC;
LAWRENCE MILLER; SEAN P. MCGRATH;
ROBERT B. HELLMAN, JR.; WILLIAM R. SHANE;
TIMOTHY YOST
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Action No. 2-16-cv-06111)
District Judge: Honorable Eduardo C. Robreno
_____

Argued: November 1, 2018
_____

Before: SMITH, *Chief Judge*, McKEE, and RESTREPO,
*Circuit Judges*.

(Filed: June 20, 2019)
—

James W. Johnson
David J. Goldsmith [ARGUED]
Michael H. Rogers

Claiborne R. Hane
James T. Christie
Labaton Sucharow LLP
140 Broadway
New York, New York 10005

Naumon A. Amjed
Ryan T. Degnan
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087

  *Counsel for Appellant*

James H. Steigerwald
Robert M. Palumbos
Brian J. Slipakoff
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103

Michael C. Holmes [ARGUED]
Craig E. Zieminski
Amy T. Perry
Merriwether T. Evans
R. Kent Piacenti
Vinson & Elkins LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201

  *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**RESTREPO**, *Circuit Judge*.

This appeal arises from Plaintiffs' purchase of common units[1] in Defendant StoneMor Partners L.P.'s ("StoneMor") business.[2]  The District Court granted StoneMor's motion to dismiss, primarily because Plaintiffs' allegations of securities fraud were found immaterial in light of Defendants' related disclosures.  For the reasons explained below, we will affirm.

## I.

StoneMor sells products and services for funerals, including burial plots and related products.  StoneMor is required by state law to hold in trust a percentage of proceeds from customers who purchase funeral products and services prior to their death.  These "pre-need sales" are released to StoneMor when the services are finally delivered to the customer—that is, upon the customer's death.  Under Generally Accepted Accounting Principles ("GAAP"), pre-need sales that are stuck in trusts may not be represented as current revenue.

During the Class Period, StoneMor executed successful acquisitions of death-care properties, which in turn increased its pre-need sales.  These pre-need sales, however, could not be demonstrated as an increase in current revenue since the proceeds were held in trusts.  Thus, as pre-need sales grew, so too did a substantial disparity between StoneMor's overall

---

[1] StoneMor is a master limited partnership whose publicly traded securities are referred to as "units," which are traded similarly to shares of stock.

[2] Plaintiffs are Peter Fan, Royal Estate Management LLC, and Fremont Hotel Inc., who propose to represent a putative class of similarly situated individuals and entities that purchased StoneMor units between March 15, 2012 and October 27, 2016 (the "Class Period").  Defendants include StoneMor, StoneMor G.P., StoneMor G.P. Holdings and its majority owner American Cemeteries Infrastructure Investors, LLC, and the controlling shareholder executives ("Defendants").

sales and its accessible cash—cash which would have otherwise been used for quarterly investor distributions.

To address this disparity, StoneMor did three things. First, along with its standard GAAP financials, it issued non-GAAP financials to its investors that represented pre-need sales as a portion of present-day current revenue. Second, it borrowed cash to distribute to investors the proceeds of pre-need sales in the same quarter the sale was made, rather than waiting until the cash was released from trust. Lastly, it used proceeds from equity sales to pay down the borrowed cash that funded distributions to investors while pre-need sales remained in trust. Thus, a feedback loop was created: cash distributions were funded by borrowed cash, that borrowed cash was paid down through equity proceeds, and equity proceeds were continuously attracted through growing pre-need sales and cash distributions.

This loop was disrupted, however, on September 2, 2016, when StoneMor announced that it would restate about three years of previously-reported financial statements. Under GAAP regulations, StoneMor was temporarily prohibited from selling units and receiving corresponding equity proceeds. Plaintiffs allege that this prohibition caused StoneMor's October 27, 2016 unit distribution to fall by nearly half; StoneMor blamed the distribution cut on salesforce issues. Regardless, once the news of StoneMor's reduced distributions broke, its unit price dropped by 45%. Shortly thereafter, Plaintiffs filed suit on November 21, 2016, alleging violations of section 10(b) of the Securities and Exchange Act of 1934, 48 Stat. 881, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

In short, Plaintiffs alleged that Defendants made false or misleading statements, with scienter, which Plaintiffs relied on to their financial detriment. Defendants filed a motion to dismiss the Complaint, which the District Court granted for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and for failure to satisfy the heightened pleading standards of the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4. For the reasons discussed below, we will affirm.

4

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and § 78aa. We have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review of the District Court's grant of a Rule 12(b)(6) motion, and 'we apply the same test as the district court.'" *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 266 (3d Cir. 2005). We may affirm a dismissal on any ground supported by the record. *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017).

## III.

Under 17 C.F.R. § 240.10b-5(b), when selling securities it is illegal for any person "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." In order to state a claim under Rule 10b-5, a plaintiff must demonstrate:

(1) A material misrepresentation (or omission);
(2) scienter (a wrongful state of mind);
(3) a connection between the misstatement and the purchase or sale of a security;
(4) reliance upon the misstatement;
(5) economic loss; and
(6) loss causation.

*See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp,* 908 F.3d 872, 879 (3d Cir. 2018). Because they allege fraud, Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Moreover, in this securities fraud action, the PSLRA imposes greater particularity requirements concerning alleged material misrepresentations and scienter. A complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief . . . all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Concerning scienter, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The PSLRA's heightened standard exists "to curb frivolous,

5

lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**A**.

Plaintiffs base their claim of fraud on three categories[3] of alleged misstatements by Defendants. First, Plaintiffs claim that StoneMor fraudulently lauded its financial strength or health in connection with the release of certain quarterly distributions. For example, in a press release discussing distribution increases in September of 2012, StoneMor stated:

> We determine the distribution based on the operating performance of the company and the resultant Available Cash at the end of the quarter. StoneMor has consistently paid quarterly distributions since its initial public offering in September 2004 using this distribution policy and intends to continue this policy into the future. Given the solid performance this year so far and what we expect will be continued good performance, we are comfortable with affirming our distribution of at least $0.585 per unit through the end of the year.

J.A. 335. Plaintiffs allege that this statement is false and misleading because StoneMor "could not, and never intended to fund the distributions from the performance of the business, *i.e.*, from day-to-day business operations." Consolidated Class Action Complaint ("CCAC") ¶ 139. Plaintiffs argue that StoneMor fraudulently omitted that its "ability to fund cash

---

[3] Plaintiffs alleged a fourth category of statements in their Complaint—certification statements required by statute. CCAC ¶¶ 196-97. Plaintiffs have not, however, appealed the District Court's finding that these statements were not false and misleading. Appellant Br. 15 n. 8.

6

distributions was contingent on its access to the capital markets." *Id.*

The second category of alleged misstatements relate to the connection between StoneMor's operations and distributions. For example, StoneMor stated in a press release that its "primary source of cash from which to pay partner distributions . . . is operating cash flow." *Id.* ¶ 134 (emphasis omitted). Plaintiffs argue that statements such as this misrepresented the fact that StoneMor's primary source of liquid cash for distributions was equity proceeds.

The third category of alleged misstatements concern StoneMor's ability to pay down its debt facility using equity proceeds. For example, a StoneMor press release stated that "StoneMor intends to use the net proceeds from the common units it is offering to pay down the borrowings outstanding under its existing credit facility." *Id.* ¶ 143 (emphasis omitted). Plaintiffs allege that this statement is misleading because StoneMor allegedly omitted the fact that its cash distributions were funded through borrowings from its credit facility.

## 1. Falsity and Materiality

In this securities fraud case, these statements are only actionable if, "when read in light of all the information then available to the market or a failure to disclose particular information, [they] conveyed a false or misleading impression." *In re Bell Atl. Corp. Sec. Litig.*, No. 91-0514 et al., 1997 WL 205709, at *23 n.86 (E.D. Pa. Apr. 17, 1997), *aff'd*, 142 F.3d 427 (3d Cir. 1998). A false or misleading statement, however, is not enough. We must also find that the alleged misstatement or omission is material.

Materiality may be found when certain information, if disclosed, "would have been viewed by the reasonable investor as having significantly altered the total mix of information available to that investor." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 714 (3d Cir. 1996) (internal quotation marks omitted) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). We conduct this review from the objective perspective of a reasonable investor. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). As such, "vague and general statements of optimism" are non-actionable precisely because they are not material—a reasonable investor would not base decisions on

such statements. *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538-39 (3d Cir. 1999), *abrogated on other grounds by Tellabs*, 551 U.S. 308.

Finally, when considering whether an alleged misstatement is material, we pay particular attention to whether or not Defendants sufficiently disclosed facts and information that would render the alleged misrepresentations not misleading. *See Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 599 (3d Cir. 2000). This case turns on Plaintiffs' allegations that StoneMor omitted necessary information that would have alerted investors to its methods for funding its distributions. For this reason, we focus primarily on the specific disclosures made by StoneMor that relate to Plaintiffs' alleged misstatements. And, as we discuss below, for each category of alleged misstatements, StoneMor disclosed sufficient information to render them immaterial.

***i.***

Plaintiffs' first category of alleged misstatements claimed that StoneMor fraudulently lauded its financial health and misrepresented that its distributions were funded "from the performance of the business, *i.e.*, from day-to-day business operations." CCAC ¶ 139. Indeed, the crux of Plaintiffs' Complaint is that StoneMor "obscured the fact that [it] paid the distribution from its revolving credit facility, which was in turn paid down through the proceeds of a series of equity offerings." CCAC ¶ 2. But this information was readily and consistently disclosed by StoneMor.

In its Form 10-Ks issued during the Class Period, StoneMor defined its "Available Cash" as consisting of "cash on hand at the end of that quarter, plus cash on hand from working capital borrowings made after the end of the quarter . . . less cash reserves." J.A. 311. This definition of Available Cash demonstrates that, at the outset, a reasonable investor would be informed that StoneMor's distributions were funded by more than just its operating revenue. Moreover, StoneMor repeatedly disclosed the risks it faced in its business, stating in its 2012 Form 10-K that it "may not have sufficient cash from operations to continue paying distributions at their current level, or at all," and that its "substantial level of indebtedness could materially adversely affect [its] ability to generate sufficient cash for distribution to [its] unitholders, to fulfill [its]

8

debt obligations and to operate [its] business." J.A. 347 (emphasis omitted). This disclosure, among others, would alert reasonable investors to the real business risks facing StoneMor. Thus, these statements Plaintiffs identify as fraudulently misleading are rendered immaterial given the pertinent disclosures. *See Ieradi*, 230 F.3d at 599-600 (discussing how disclosures present in Defendant's Form 10-Qs were sufficient to alert a reasonable investor to the relevant risks).

## *ii.*

Plaintiffs' second category of alleged misstatements concerns the fact that StoneMor's distributions were funded in large part through its cash borrowings, and not its day-to-day operating revenue. But this information was also readily and repeatedly disclosed.

In each of its annual reports during the Class Period, StoneMor issued GAAP and non-GAAP financials side-by-side, which demonstrated the mathematical reality that StoneMor was not able to fund its distributions primarily from its day-to-day operations because much of that cash was being held in state trusts and was unrecognized by GAAP. *See e.g.*, J.A. 357; *See U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1105 n.1 (9th Cir. 2016) (noting that publicly-traded companies may use non-GAAP reports if presented with at least equal prominence (citing 15 U.S.C. § 78m; 17 C.F.R. § 229.10)). StoneMor was transparent in this accounting method, and even used a bar chart at a 2013 investor presentation that represented its distribution amount and non-GAAP operating profits towering over its GAAP operating profit. CCAC ¶ 155. When viewed alongside these disclosures, Plaintiffs' allegations that StoneMor fraudulently concealed the fact that its distributions were not funded primarily from the current operating revenue fall flat. StoneMor's disclosures render any such perceived misstatement immaterial.

## *iii.*

The third category of alleged misrepresentations relates to StoneMor's usage of equity proceeds as a means to pay down its debt facility from which it borrowed cash for

distributions.  Here too, StoneMor's disclosures are sufficient to render these allegations immaterial.

Indeed, Plaintiffs' own Complaint quotes from StoneMor press releases that state clearly that "StoneMor intend[ed] to use the net proceeds from the [equity] offering to pay down outstanding indebtedness under its revolving credit facility."  CCAC ¶ 176; *accord id.* ¶¶ 179, 184, 186 (emphasis omitted).  The Complaint also references a 2016 Quarterly Report, which describes a successful public offering and explains that the "proceeds from the offering were used to pay down outstanding indebtedness under the Credit Facility."  CCAC ¶ 189 (emphasis omitted).  In light of these disclosures, we cannot conclude that the statements contained in Plaintiffs' third category of alleged misrepresentations are material because a reasonable investor would have been aware of the fact that StoneMor used equity proceeds to pay down its debt.

Overall, for each category of StoneMor's alleged misstatements, clear and consistent disclosures were made available to investors throughout the Class Period.  As a result, we hold that StoneMor sufficiently disclosed facts and information that render its alleged misrepresentations not misleading.  *See Ieradi*, 230 F.3d at 599.

## 2.  Scienter

Even if we were to hold that StoneMor's alleged misrepresentations were materially misleading, Plaintiffs' claims would still fail because our review of the record does not demonstrate the necessary state of mind by Defendants.  In line with its heightened pleading standards, the PSLRA requires that the plaintiff's pleadings conjure a "strong inference" that the defendant acted with the necessary state of mind, that is, with intent to defraud shareholders.  15 U.S.C. § 78u-4(b)(2)(A).  Scienter may also be shown by a "knowing or reckless state of mind," which in this securities context would be demonstrated by pleading "an extreme departure from the standards of ordinary care."  *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252, 267 n.42 (3d Cir. 2009).  A strong inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.

Such an inference is clearly not present here.  For each category of statements, as described above, StoneMor's

disclosures draw a strong inference that the investors were appraised of the relevant information regarding StoneMor's cycle of equity offerings, cash borrowings, and cash distributions. These disclosures do not demonstrate an intent to defraud—rather, they accurately show how StoneMor leveraged its assets in order to maximize its distributions despite the state trust requirements attached to its pre-need sales. StoneMor may have been caught by the risk inherent in its business strategy, but those risks were disclosed in their annual Form 10-Ks throughout the Class Period. Thus, we hold that the pleadings do not demonstrate scienter as the PSLRA requires.

## IV.

While we acknowledge the economic harm suffered by StoneMor's investors, we cannot say that it was the result of fraud. Our holding today simply reaffirms the well-established rule that, in a securities fraud case, a defendant's sufficient disclosure of information can render alleged misrepresentations immaterial. This is such a case. StoneMor's disclosures sufficiently informed the reasonable investor of the risks inherent in its business, and it is not our place to correct the cost of doing business when it meets the requirements of the law.

Given the foregoing, we will affirm the decision of the District Court.