NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1292

_____

In re: NEWELL BRANDS, INC. SECURITIES LITIGATION

HAMPSHIRE COUNTY COUNCIL AS ADMINISTERING AUTHORITY
OF THE HAMPSHIRE COUNTY COUNCIL PENSION FUND,
Appellant

v.

NEWELL BRANDS INC; MICHAEL B. POLK;
RALPH J. NICOLETTI; JAMES L. CUNNINGHAM, III

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No.: 2-18-cv-10878)
Judge: Honorable John M. Vazquez

_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 25, 2020

(Filed: December 1, 2020)

Before:  MCKEE, JORDAN and RENDELL, *Circuit Judges*.
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, *Circuit Judge*:

Plaintiff-Appellant challenges the District Court's decision to grant Defendants-Appellees' motion to dismiss for failure to state a claim. Plaintiff, a pension fund, brought a federal securities class action on behalf of purchasers of Newell Brands, Inc. ("Newell") stock between February 6, 2017 and January 24, 2018 ("Class Period"). The District Court concluded that Plaintiff failed to sufficiently plead a violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. As result, the District Court determined that Plaintiff's claim under Section 20(a) also fails. For the following reasons, we will affirm.

I.     FACTUAL BACKGROUND

Plaintiff sued Newell, as well as three senior officers, Michael B. Polk, Ralph J. Nicoletti, and James L. Cunningham, in the United States District Court for the District of New Jersey claiming material misrepresentation and fraud.[1]

Newell manufactures and markets consumer products. Newell acquired Jarden Corporation ("Jarden") in April 2016 for approximately $15.3 billion, which more than doubled the size of Newell. Newell reported strong financial results in the first three

---

[1] The senior officers' positions are as follows: Michael B. Polk, President and Chief Executive Officer of Newell; Ralph J. Nicoletti, Executive Vice President and Chief Financial Officer; and James L. Cunningham, Senior Vice President and Chief Accounting Officer.

quarters of 2016. According to Plaintiff, "by all accounts, the momentum behind Newell and its integration of Jarden was building entering the Class Period." App. 69.

Plaintiff alleges that during the Class Period, Newell was suffering from various operational problems that had a material adverse impact on Newell's financial performance. Plaintiff averred that Newell "embarked on a scheme to conceal these issues from investors, and later chose to actively mislead investors about the true reasons behind the downturn in Newell's business." App. 70.

Plaintiff claims that Defendants' "issued and reaffirmed false and misleading 2017 financial guidance to investors without a reasonable basis." App. 96. The Complaint alleges that Defendants deceived investors by misrepresenting or failing to disclose three categories of information: 1) excess inventory levels, 2) pricing conflicts between Newell's E-Commerce and Brick-and-Mortar divisions, and 3) operational issues relating to Newell's acquisition of Jarden.

A. *Excess Inventory Levels*

Plaintiff claims that before and during the Class Period, Defendants recognized that Newell's retail customers were reducing their inventory (or "destocking"), but that Defendants led investors to believe that any negative effects due to destocking would abate by mid-2017. Defendant Polk told investors on a call in February 2017 that "while the Company would 'continue to feel some of those dynamics through the first half of the year,' once Newell got 'through that window, this reset of the inventory algorithms that retailers have will be behind us.'" App. 109. In May 2017, Defendant Polk told investors that "[s]o the inventory reduction impacts were broad-based. . . . The good news

3

is that these things are now behind us." App. 115. In August 2017 Defendant Polk represented that ". . . once we get . . . into the fourth quarter, I think the degree of impact lessens," and that destocking would not have "as profound an impact on the business as the last three quarters and a month or two through Q4 of the last year." App. 120.

Plaintiff alleges that Defendants' statements related to inventory destocking were false and misleading statements because "far from being behind them, Defendants knew that inventory destocking by its retailer customers would have an increasingly negative effect on Newell's sales growth and margins." App. 109. Plaintiff cites to the fact that Newell's inventory levels "were around 42% higher than industry averages, and substantially higher than any of the inventory levels for the companies in Newell's peer group" to allege that "Defendants knew that its bloated inventory levels would have an increasingly negative effect on Newell's sales growth and margins." App. 115–16.

On appeal, Plaintiff asserts that these statements were false or misleading because Newell's rising inventory levels and associated financial problems were in fact the result of additional factors that Defendants concealed, such as Newell firing much of the Jarden legacy salesforce and lack of flexibility within Newell's supply chain.

B. *Pricing Conflicts Between E-Commerce and Brick and Mortar Divisions*

Plaintiff claims that Defendants misled investors by concealing pricing conflicts between the Brick and Mortar divisions and the E-Commerce divisions. Plaintiff alleges that before the Class Period, Defendant Polk assured investors that management was aware of the potential issues that could arise from pricing conflicts and was actively monitoring for these issues, but then failed to disclose to investors when pricing conflicts

4

occurred. Plaintiff claims that Defendants misled the market by "prominently touting the growth of the Company's E-commerce division as a driver of sales growth in the second half of 2017," while knowing there were ongoing pricing conflicts. App. 80. The Complaint includes two examples—fishing reels and Calphalon pots—in which pricing conflicts resulted "in Newell offering that retailer substantial promotional funding, which also negatively impacted the Company's margins." App. 77–78. Plaintiff claims that this caused "inconsistent pricing, strained customer relationships, and ultimately a negative impact on the Company's sales growth and margins." *Id.* at 76–77. Plaintiff does not further detail the specific financial impact of these pricing conflicts.

### C. Operational Issues Associated with the Jarden Acquisition

Plaintiff alleges that Defendants concealed operational and cultural issues which prevented Newell from capturing the benefits from the Jarden acquisition as Newell had promised. Plaintiff claims that Defendants' false or misleading statements about the integration included that "the change in the U.S. is largely behind us," there is "nothing material" left to do, and "I'm resting a lot easier than I was." App. 109, 133. Plaintiff contends that the firing of Jarden legacy sales team members, increases in corporate costs from mismanagement and poor organizational structure, and widespread communication issues together created significant problems within Newell. Additionally, the Transformation Office was designed to create cost savings and synergies, but it contributed to escalating costs.

5

Plaintiff contends that Defendants concealed these problems and instead "falsely reassured investors that the Company was on track with the integration of Jarden and that any significant issues were behind it." App. 93.

Defendant moved to dismiss the Complaint, contending that Plaintiff failed to state a claim pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u *et seq.*, and Federal Rule of Civil Procedure 12(b)(6).

## II. THE DISTRICT COURT'S OPINION

The District Court granted Defendants' motion to dismiss Plaintiff's First Amended Consolidated Complaint. The District Court concluded that Plaintiff failed to sufficiently plead the first element of a Section 10(b) claim in that it "failed to adequately allege 'a false representation of material fact or omission that makes a disclosed statement materially misleading.'" App. 28 (citing *In re NAHC, Inc. Securities Litigation,* 306 F.3d 1314, 1330 (3d Cir. 2002)). Because Section 20(a) of the Exchange Act is "contingent upon sufficiently pleading an underlying violation of Section 10(b) by the controlled person," the District Court also dismissed Plaintiff's Section 20(a) claim against Polk, Nicoletti, and Cunningham. App. 31.

The District Court provided Plaintiff thirty days of leave to file an amended pleading, but Plaintiff did not file an amended pleading. The District Court ordered that Plaintiff's First Amended Consolidated Complaint be dismissed with prejudice. Plaintiff timely appealed.

III.    JURISDICTION AND STANDARD OF REVIEW

The United States District Court had jurisdiction over this action under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331 and 1337.  This Court has jurisdiction under 28 U.S.C. § 1291.

Our review of a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary and we may affirm a dismissal on any ground supported by the record.  *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017).  We apply the same test as the District Court.  *Maio v. Aetna, Inc.*, 221 F.3d 472, 481 (3d Cir. 2000).

IV.    ANALYSIS

Section 10(b) of the Exchange Act prohibits the "use or employ[ment], in connection with the purchase or sale of any security . . . [, of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).  SEC Rule 10b–5 implements this provision by making it unlawful to, among other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).  "To state a claim under Rule 10b-5, a plaintiff must demonstrate: (1) A material misrepresentation (or omission); (2) scienter (a wrongful state of mind); (3) a connection between the misstatement and the purchase or sale of a security; (4) reliance upon the misstatement; (5) economic loss; and (6) loss causation." *Fan v. StoneMor Partners LP*, 927 F.3d 710, 714 (3d Cir. 2019) (citing *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 879 (3d Cir. 2018)).

7

Plaintiff also must satisfy the particularity requirements for a fraud claim under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4. *City of Cambridge Ret. Sys.*, 908 F.3d at 879. The purpose of the heightened pleading requirements is to ensure that private securities actions do not become "a partial downside insurance policy" against the vicissitudes of the market. *Id.* at 880. Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A complaint involving securities fraud must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief . . . all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). It must also must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

For allegations of securities fraud, statements are actionable only if, "when read in light of all the information then available to the market or a failure to disclose particular information, [they] conveyed a false or misleading impression." *Fan*, 927 F.3d at 715–16 (citing *In re Bell Atl. Corp. Sec. Litig.*, No. 91-0514, 1997 WL 205709, at *23 n.86 (E.D. Pa. Apr. 17, 1997), *aff'd*, 142 F.3d 427 (3d Cir. 1998)). We must distinguish material representations from statements of opinion, motive, or statements which "constitute no more than 'puffery' and are understood by reasonable investors as such." *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 872 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*,114 F.3d 1410, 1428 n.14 (3d Cir. 1997)). Although

8

traditionally appropriate for the trier of fact, statements that are obviously unimportant may be immaterial as a matter of law. *Id.* at 875.

We accept all well-pleaded allegations as reasonable inferences in favor of the plaintiff, but "we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir.2007) (citations and internal quotation marks omitted).[2]

### A. False and Misleading Statements

The District Court correctly found that Plaintiff has failed to sufficiently plead an actionable material misrepresentation or omission. As noted above, Plaintiff's claim involves representations related to 1) Newell's excess inventory levels, 2) pricing conflicts between the Brick and Mortar and the E-Commerce Divisions, and 3) operational issues related to the Jarden integration. We will discuss each in turn.

### 1. Excess Inventory Levels

We agree with the District Court that Plaintiff failed to "plausibly allege the material impact of excess inventory levels on Newell's finances." App. 27. Without allegations to support that the excess inventory had a material financial effect on Newell, we cannot say that Defendants omitted information that would have "significantly altered the total mix of information made available." *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 710 (3d Cir. 2020).

---

[2] We need not address the PSLRA safe harbor issue because we can decide this matter based on the first element of Plaintiff's Section 10(b) fraud claim.

The District Court also correctly determined that the Complaint lacks allegations to show that Defendants' representations about inventory destocking were false. In alleging falsity, a plaintiff cannot "rely on conjecture based on subsequent events," but should instead cite contemporaneous sources. *Williams v. Globus Med., Inc.*, 869 F.3d 235, 244 (3d Cir. 2017). The allegations "must be sufficient to show that the challenged statements were 'actionably unsound when made.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1430).

Plaintiff's allegations fail to refer to contemporaneous sources showing that Defendants' statements were false or misleading. As the District Court explained, Plaintiff has not alleged that "the Executive Defendants were given internal warnings about the precise inventory issues that caused Newell to miss its predicted guidance figures." App. 27. The District Court also correctly noted that "while Plaintiff relies on the Starboard Presentation to show that Newell's inventory levels were approximately 42% higher than industry averages, Plaintiff does not explain why such a comparison is indicative of fraud." App. 27 (citation omitted). Even if Defendants were aware of their inventory levels relative to industry averages, Plaintiff has not pled allegations to support that this renders any of their statements false. Actual knowledge of inventory levels differs from actual knowledge that inventory levels would continue to impair Newell's financial performance.[3]

_____

[3] Plaintiff alleges on appeal that "Defendants attribution of inventory destocking as the principal cause of Newell's increasing inventories was highly misleading because it concealed the fact that the Company's failed integration of Jarden and its inflexible supply chain were also responsible." App. Br. 34. Even if this theory aligns with the

10

## 2. Pricing Conflicts Between the E-Commerce Division and Brick and Mortar Stores

The District Court correctly decided that Plaintiff failed to sufficiently allege that the pricing conflicts had a material financial impact on Newell. As the District Court explained, Plaintiff only alleges that the pricing conflicts led to "extensive promotional discounting" but provides no information "such as when such discounts occurred, the amount of such discounts, the adverse financial impact of such discounts, or when the adverse impact was felt by Newell." App. 27. Without information to support that the pricing conflicts had a material financial effect on Newell, we cannot say that it would "alter the total mix of relevant information available to a reasonable investor." *EP Medsystems, Inc.*, 235 F.3d at 872.[4]

We also agree with the District Court that Plaintiff has not alleged how the resulting promotional discounting suggests fraud. Plaintiff's theory of misrepresentation relies on Defendant Polk's pre-Class Period discussion with investors about the importance of avoiding pricing conflicts *that could affect the growth of the E-Commerce division.* Plaintiff argues that Defendants' Class Period statements about the strength of

---

theory of misrepresentation alleged in the Complaint, these allegations still lack any particularized allegation about how the increasing inventories impacted Newell's growth margins or otherwise rendered Defendants' statements false.

[4] Plaintiff argues that the District Court inappropriately required that they demonstrate a quantitative impact to show materiality. We have rejected "that materiality must be quantified at a specified percentage of income or assets" and instead evaluate materiality case-by-case. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 714 (3d Cir. 1996). But the issue is not that Plaintiff failed to quantify materiality. Rather, it is that Plaintiff's Complaint lacks well-pleaded facts to link the alleged problems to material financial impacts.

the E-Commerce division were misleading because of Defendants' earlier assurances that they would monitor for pricing conflicts and the fact that "pricing conflicts had already developed." App. 116. But again, Plaintiff has not alleged that the E-Commerce division was experiencing an adverse financial impact because of these pricing conflicts. Nor has Plaintiff pled that an adverse financial impact was "inevitable" or "imminent" when Defendants' representations were made. *See Williams*, 869 F.3d at 243; *City of Cambridge Ret. Sys.*, 908 F.3d at 882. Defendants only needed to disclose information necessary "to make the statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b–5(b)). Absent a contemporaneous financial impact, Plaintiff has failed to show how the pricing conflicts and resulting discounting render Defendants' statements misleading.

### 3. Operational Issues Related to the Jarden Acquisition

The District Court rightly concluded that Plaintiff failed to allege any false or misleading statement related to the Jarden integration. Plaintiff cites integration failures that rely on hindsight rather than contemporaneous sources. This is insufficient. *See City of Cambridge Ret. Sys.*, 908 F.3d at 883. As the District Court explained, "Plaintiff does not allege that Defendants indicated that they were drastically cutting costs in the Transformation Office while, in reality, they were dramatically increasing costs. Similarly, Plaintiff does not allege that Defendants stated that the R&D process resulted in a high success rate while, in fact, only a very low percentage of products made it through the process." App. 28. Similarly, the mere firing of the legacy sales force does

12

not support that Defendants knew that this decision would cause significant problems when they issued positive assessments of the integration. *C.f. California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004) (finding that a plaintiff failed to meet the particularity requirements for pleading falsity when their only support was a statement that the initiative was a failure because it was "wholly conclusory and lack[ed] data to support it").

We share the District Court's view that "allegations in this category simply reflect bad business decisions (or reasonable decisions that did not pan out)." App. 27. Bad business decisions, without more, do not constitute federal securities fraud. *See In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 376 (3d Cir. 1993) ("It is well-established that the securities laws do not create liability for breaches of fiduciary duty or mismanagement."). However, the District Court's reference to the business judgment rule here is misplaced. The business judgment rule does not shield actors from federal securities fraud. *See Miller v. Am. Tel. & Tel. Co.*, 507 F.2d 759, 762 (3d Cir. 1974) ("Where, however, the decision . . . is itself alleged to have been an illegal act, different rules apply. . . . [W]e are convinced that the business judgment rule cannot insulate the defendant directors from liability."). But this issue is of no moment because we agree with the District Court that Plaintiff's allegations fail on the lack of falsity and materiality. Thus, we will affirm on that basis.

## B. Control Person Liability

Plaintiff asserts control person liability against the individual Defendants under Section 20(a). Section 20(a) makes controlling persons jointly and severally liable with

13

the controlled person.  15 U.S.C. § 78t(a).  "[L]iability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).  Because the District Court found that Plaintiff had not sufficiently alleged a violation of Section 10(b), the Court dismissed the Section 20(a) claims.  We will affirm the District Court's conclusion and find that the Section 20(a) claims were properly dismissed as well.

V.    CONCLUSION

For these reasons, we will affirm the District Court's order granting Defendants-Appellees' motion to dismiss.