PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2729
_____

In re:  ALLERGAN ERISA LITIGATION

ANDREW J. ORMOND, on behalf of the Allergan, Inc.
Savings and Investment Plan, the Actavis, Inc. 401(k) Plan,
himself, and a class consisting of similarly situated
participants of the Plan; JACK XIE,

                                                        Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 2:17-cv-01554 & 2:17-cv-05070)
District Judge:  Honorable Susan D. Wigenton
_____

Argued
May 19, 2020

Before:   JORDAN, BIBAS, and NYGAARD, *Circuit
Judges.*

(Filed: September 18, 2020)
_____

Jacob H. Zamansky
Samuel E. Bonderoff   [ARGUED]
Zamansky, LLC
50 Broadway – 32nd Floor
New York, NY   10004

Gary S. Graifman
Kantrowitz Goldhamer & Graifman
210 Summit Avenue
Montvale, NJ   07645

Michael J. Klein
Abraham Fruchter & Twersky
One Penn Plaza – Suite 2805
New York, NY   10119

Mark Levine
324 Third Avenue
Pelham, NY   10803

Patrick K. Slyne
Stull Stull & Brody
6 East 45th Street
New York, NY   10017
        *Counsel for Appellants*

Anjuli M. Cargain
Robert D. Eassa
Paul J. Killion
Duane Morris
One Market Plaza
Spear Tower, Suite 2200
San Francisco, CA   94105

Joseph F. Falgiani
Joseph G. Harraka, Jr.   [ARGUED]
David G. Tomeo
Robert D. Towry
Becker, LLC
354 Eisenhower Parkway
Plaza II, Suite 1500
Livingston, NJ    07039
        *Counsel for Appellee*

_____

OPINION
_____

JORDAN, *Circuit Judge*.

In this appeal from the dismissal of a putative class action, we are asked to decide whether plaintiffs Andrew J. Ormond and Jack Xie, former employees of Allergan plc ("Allergan," or the "Company") and participants in the Company's employee stock ownership plan ("ESOP"), have plausibly alleged that the defendants breached certain fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA").[1]  According to the plaintiffs, the defendants, who are numerous individuals and entities responsible for

---

[1]    The named plaintiffs brought suit individually, derivatively on behalf of the Plans (as defined below), and as representatives of a purported class of similarly-situated Plan participants.  We refer to these constituencies collectively as "the plaintiffs."

administering or supervising the Company's benefit plans,[2] knew or should have known that the Company's stock price was artificially inflated as a result of an illegal price-fixing conspiracy, yet they took no action to prevent the plaintiffs from acquiring Allergan stock at falsely inflated prices.

Having considered the complaint, we agree with the District Court that, even when viewed in the light most favorable to the plaintiffs, the well-pled factual allegations fail to support a plausible inference that the Company conspired with competitors to fix prices. Because all of the plaintiffs' causes of action ultimately rest on the premise that the defendants knew or should have known about that supposed illegal conduct, the absence of allegations sufficient to support the existence of it is fatal to each of their claims. Furthermore, we discern no abuse of discretion in the District Court's decision to deny the plaintiffs leave to amend the complaint. The plaintiffs' perfunctory request in that regard not only failed to include a proposed amended complaint but also lacked any description of or explanation about the modifications they might make. Accordingly, we will affirm.

---

[2] The defendants are comprised of: Allergan; its Employee Benefits Plan, Oversight, and Investment Committees (and the individual members of those committees, both known and unknown); the individual members of the Company's Board of Directors (the "Director Defendants"); and any other known or unknown committees or individuals who served as Plan fiduciaries from October 29, 2013 through November 2, 2016 (the "Class Period").

4

## I.  BACKGROUND

### A.  Factual Background

The plaintiffs are participants in the Allergan, Inc. Savings and Investment Plan (the "Plan," and, together with its predecessor plans, the "Plans"),[3] which includes various investment options for its participants. One of those is an ESOP feature, through which participants can buy Allergan stock. According to the plaintiffs, the various defendants in this dispute were Plan fiduciaries within the meaning of ERISA and owed them commensurate duties under that statute.

The central tenet of the plaintiffs' complaint is that, although the public was unaware, at least some of the defendants knew or should have known that, prior to the divestiture of its generic-drug business,[4] Allergan had

_____

[3] The Plan, which traces its origins back to 1988, exists in its current form following a series of name changes, corporate acquisitions, and other modifications that are not relevant to the disposition of this appeal.

[4] Allergan completed the sales of its "Global Generics" and "ANDA Distribution" businesses to Teva Pharmaceuticals on August 2, 2016 and October 3, 2016, respectively. (App. 70-71.) The plaintiffs do not allege that Allergan engaged in price fixing subsequent to the divestitures. To the extent it is relevant, and no party argues that it is, the slight discrepancy between the date of Allergan's divestitures and the end of the Class Period appears to be attributable to November 2, 2016 being the last date that Allergan publicly announced quarterly

conspired with other generic-drug manufacturers to fix prices, thereby artificially boosting its financial performance, and, in turn, its stock price.[5] As support for their price-fixing theory, the plaintiffs allege that, during October 2014 to June 2015, a time when generic-drug prices in general were surging, Allergan received inquiries both from members of Congress and the Antitrust Division of the Department of Justice ("DOJ") seeking information about large price increases in certain of the generic drugs it manufactured. According to news reports cited by the plaintiffs, the DOJ charged some unidentified person or entity involved in the generic-drug industry with price-fixing, as part of "a sweeping criminal investigation into suspected price collusion," and the DOJ was "expected to remain active in pursuing generic-drug price fixing[.]" (App. 73.) The plaintiffs do not allege that Allergan was ever charged in connection with the DOJ investigation. Nevertheless, they say that the defendants' failure to remove Allergan stock as an investment option from the Plan, or otherwise take any action to protect the Plan participants from

---

financial and operating results reflecting the operations of the divested generics businesses.

[5] The plaintiffs also contend that the Company lacked effective internal controls over its financial reporting systems. That contention appears simply to be support for their overarching argument that Allergan's financials did not reflect the effects of the alleged price-fixing conspiracy. Indeed, the complaint is devoid of any well-pled allegations that could, premised only on the Company's supposed lack of internal controls, state a distinct claim for breach of fiduciary duties under ERISA.

Allergan's inflated stock prices, violated fiduciary duties owed under ERISA.

## B.    Procedural Background

This case originated as two separate actions filed by Xie and Ormond, Xie's in the United States District Court for the Central District of California, and Ormond's in the District Court here.  Xie agreed to transfer his case, and, shortly thereafter, the actions were consolidated in the District Court under the caption "*In re Allergan ERISA Litigation*."  (App. 8.) Following consolidation, the plaintiffs filed a three-count amended complaint – the operative complaint here – alleging: a failure to prudently manage the Plans' assets, in violation of ERISA §§ 404(a)(1)(B) and 405 (Count One); breach of the duty of loyalty, in violation of ERISA §§ 404(a)(1)(A) and 405 (Count Two); and failure to adequately monitor other fiduciaries and provide accurate information, in violation of ERISA § 404 (Count Three).

The defendants moved to dismiss the complaint in its entirety, which was granted.  Regarding Count One, the District Court held that it was insufficiently pled for two independent reasons.  First, according to the Court, the plaintiffs failed to "set forth sufficient facts to establish" or even imply that the defendants had "engaged in collusive and/or fraudulent activity during the Class Period such that they could have insider information to that effect."  (App. 13.) Second, even if the defendants possessed any such insider information, the Court determined that the plaintiffs still could not state a claim because, under *Fifth Third Bancorp v.*

7

*Dudenhoeffer*, 573 U.S. 409 (2014),[6] a prudent fiduciary could have concluded that any of the plaintiffs' proposed alternatives to doing nothing about their supposed knowledge of the alleged price-fixing would do more harm than good to the Plan participants.

The District Court then proceeded to dismiss Count Two – the duty of loyalty claim – as being merely "derivative of [the] insufficiently pled duty of prudence claim[]" in Count One (App. 17-18.) And, absent any well-pled claim for a breach of an ERISA duty, the Court concluded that Count Three – the duty to monitor claim – necessarily failed too. Finally, the District Court denied the plaintiffs' request for leave to amend their complaint because "[t]here [wa]s nothing to suggest that providing another opportunity to amend the pleadings would be beneficial or result in a different outcome." (App. 19 n.11.)

The plaintiffs timely appealed. After the briefing for this appeal was completed, but shortly before oral argument,

---

[6] *Dudenhoeffer* was a watershed decision by the Supreme Court in which it rejected the consensus among courts of appeals that ESOP fiduciaries are entitled to a "presumption of prudence." *Id.* at 412. Instead, the Court held that, "[t]o state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Id.* at 428.

8

the Supreme Court granted certiorari review of the Second Circuit's decision in *Jander v. Retirement Plans Committee of IBM*, 910 F.3d 620 (2d Cir. 2018), another case involving ERISA's duty of prudence in the ESOP context. Because the Supreme Court's decision in *Jander* had the potential to clarify or modify *Dudenhoeffer*, the parties jointly requested that we hold this matter *curia advisari vult*, pending the Supreme Court's decision in that case. We did so. When the Supreme Court issued its decision in *Jander* earlier this year, this matter was reinstated as an active appeal.[7]

## II.   DISCUSSION[8]

### A.   Plaintiffs' ERISA Claims[9]

The "thrust" of the plaintiffs' allegations in Counts One and Two of the complaint is that the "[d]efendants

---

[7] The Supreme Court elected not to reach the merits of the dispute in *Jander* because the parties raised new arguments that were not presented to the Second Circuit. *Ret. Plans Comm. of IBM v. Jander*, 140 S. Ct. 592, 594–95 (2020). Instead, the Court vacated the Second Circuit's opinion and remanded the matter for the Second Circuit to decide in the first instance whether it wished to consider those new arguments. *Id.* at 595. On remand, the Second Circuit declined to consider the new arguments and reinstated its original decision. *Jander v. Ret. Plans Comm. of IBM*, 962 F.3d 85, 86 (2d Cir. 2020).

[8] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[9] "We review *de novo* a district court's grant of a

9

[imprudently and disloyally] allowed the investment of the Plans' assets in Allergan Stock throughout the Class Period despite the fact that [d]efendants knew or should have known that that investment was imprudent[.]" (App. 25.) According to the plaintiffs, Allergan stock was a poor investment during the Class Period because "Allergan and several of its pharmaceutical industry peers colluded to fix generic-drug prices in violation of federal antitrust laws, creating excess revenues as a result of anticompetitive behaviors and putting Allergan at risk of criminal prosecution and civil and criminal penalties[.]" (App. 71.) Moreover, the plaintiffs say, "[the d]efendants, as Allergan insiders, knew or should have known that the Company was conspiring to raise its profits in violation

---

motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (citation omitted). In conducting such a review, "[w]e take as true all the factual allegations of the … Complaint and the reasonable inferences that can be drawn from them, but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (internal quotation marks and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted). "[W]e may affirm a judgment of a lower court for any reason supported by the record …." *In re Ross*, 858 F.3d 779, 786 (3d Cir. 2017) (citation omitted).

of antitrust laws." (App. 74.) Thus, the threshold issue in analyzing the ERISA claims here is whether the plaintiffs have plausibly alleged any facts to back up their assertion that Allergan participated in an unlawful price-fixing conspiracy. Absent such allegations, there was nothing that the defendants knew or should have known that ought to have prompted them to protect the putative class from acquiring Allergan stock. As the District Court correctly held, the plaintiffs' complaint is deficient at this initial step.

The factual allegations that supposedly demonstrate that Allergan was involved in such a conspiracy are scant and can be summarized as follows: (i) the market for generic drugs is highly competitive; (ii) the prices for several generic drugs increased markedly over a brief period of time; (iii) certain members of Congress sought to investigate the increases; (iv) in connection with that investigation, Allergan was asked to provide information about price increases for certain generic drugs it manufactures; (v) several months later, Allergan received a subpoena from the DOJ requesting information about the marketing and pricing of some of its generic products and communications with competitors regarding the same; and (vi) over a year after receiving the subpoena, the DOJ brought price-fixing charges against at least one unnamed party – but not Allergan – related to generic drugs, and the DOJ was "expected to remain active in pursuing generic-drug price fixing[.]" (App. 73.)

Considered holistically, and taking all reasonable inferences in the plaintiffs' favor, those allegations fail to support a plausible inference that Allergan conspired with other generic-drug manufacturers to fix prices. At most, the plaintiffs' complaint can be described as alleging parallel price

11

increases among generic-drug manufacturers, including Allergan. But, despite the plaintiffs' insistence to the contrary, the Supreme Court has been clear "that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Rather, because "parallel conduct[, without more,] does not suggest conspiracy," allegations of parallel conduct "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Id.* at 557; *see also In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 398 (3d Cir. 2015) ("[E]vidence of conscious parallelism cannot alone create a reasonable inference of a conspiracy. To move the ball across the goal line, a plaintiff must also show that certain plus factors are present. Plus factors are 'proxies for direct evidence' because they tend[ ] to ensure that courts punish concerted action—an actual agreement—instead of the unilateral, independent conduct of competitors." (second alteration in original) (internal quotation marks and citations omitted)); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 226 (3d Cir. 2011) ("The law is well-established that evidence of parallel conduct by alleged co-conspirators is not sufficient to show an agreement." (internal quotation marks and citations omitted)).

The plaintiffs have not placed their allegations in any such context. That Allergan received requests for information from Congress and the DOJ as part of broad investigations, requests the Company apparently complied with, does not on its own suggest the existence of an agreement among Allergan and its competitors. That is particularly so where, as here, there are no well-pled allegations either of communications or interactions among Allergan and its competitors, or even of

12

opportunities for such communications or interactions. Nor are there allegations that the information gathering exercises the Company was subjected to resulted in any charge of wrongdoing against either Allergan or any of its competitors with respect to a product that Allergan manufactures.[10] The plaintiffs have thus failed to plausibly allege Allergan's participation in an illegal price-fixing conspiracy. Because the defendants could not have had insider information about a price-fixing conspiracy that did not exist, or at least the existence of which was not adequately pled, it follows that the plaintiffs' ERISA claims, each of which is predicated on the defendants' knowledge of that purported conspiracy, must fail.[11]

---

[10] The complaint is devoid of any well-pled allegations that, during the approximately 28 months that passed between Allergan's receipt of the DOJ's subpoena and the filing of the operative complaint, Allergan was subject to any further scrutiny with respect to price-fixing, including further requests for information.

[11] Although not directly dependent on the defendants' knowledge of a price-fixing conspiracy, the plaintiffs' duty to monitor claim is indirectly based on the defendants having that knowledge because "whether [p]laintiffs' monitoring claim survives depends on whether their underlying breach of fiduciary duty [of prudence and loyalty] claims survive." (Appellants' Reply Br. at 27 n.18.) *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor ... absent an underlying breach of the duties imposed under ERISA[.]" (alteration in original) (citation omitted)).

The plaintiffs' arguments to the contrary are not persuasive. First, they criticize the District Court's holding that the allegations in the complaint "do not rise above the speculative level of misconduct." (Appellants' Opening Br. at 15 (quoting (App. 13)).) As they see it, they specifically alleged an "unconscionable increase in price [for a drug Allergan manufactures,]" and that increase "is well beyond speculation; it is fact." (Appellants' Opening Br. at 15.) But that criticism ignores the central thesis of their own allegations. The plaintiffs do not contend that an increase in generic-drug prices, even a dramatic one, is itself a legal wrong that should have prompted the defendants to prevent the putative class from acquiring Allergan stock. Rather, they theorize that the price increase in this case constituted misconduct because it was attributable to an unlawful price-fixing conspiracy. As already discussed, however, even parallel price increases among competitors, without more, do not by themselves indicate the existence of an illegal conspiracy. Accordingly, while the plaintiffs have alleged that the price for at least one drug that Allergan manufactured increased significantly, that fact does "not nudge[] their claims [of misconduct in the form of illegal price-fixing] across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

The plaintiffs next argue that the District Court ignored their "well-pled and plausible allegations that '(i) Allergan and several of its pharmaceutical industry peers colluded to fix generic drug prices in violation of federal antitrust laws … putting Allergan at risk of criminal prosecution and civil and criminal penalties; [and] (ii) the DOJ investigation and the underlying conduct could result in criminal charges[.]'" (Appellants' Opening Br. at 16 (quoting (App. 71)).) This argument fails because the allegations referred to are not well-

14

pled facts but are instead conclusions entitled to no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.") The District Court did not err in refusing to credit such assertions absent supporting factual allegations.

Third, the plaintiffs say that the District Court was wrong to dismiss their complaint on the basis that they had "not set forth sufficient facts to establish or even [imply] that [d]efendants engaged in collusive and/or fraudulent activity during the Class Period such that they could have insider information to that effect." (App. 13.) According to the plaintiffs, "nothing in ERISA suggests that [p]laintiff[s] must prove that collusive or fraudulent activity occurred; ERISA indisputably does not require allegations of scienter." (Appellants' Opening Br. at 17.) But they again ignore the premise of their own complaint. Regardless of whether ERISA requires proof of "collusive or fraudulent activity," the plaintiffs specifically chose a theory of liability predicated on Allergan's participation in an unlawful price-fixing conspiracy. In advancing that theory, they assumed the burden of plausibly alleging both the existence of a price-fixing conspiracy and Allergan's participation in it. The plaintiffs identify no other insider information that the defendants should have acted on with respect to their administration of the Plans. Moreover, it is simply not accurate that the District Court either explicitly or implicitly analyzed the price-fixing allegations under some heightened pleading standard. The plaintiffs' claims were not dismissed because of a failure to adequately

15

allege scienter. Rather, the claims were rejected as insufficient because the plaintiffs' antitrust allegations fall far short of plausibly suggesting the existence of a price-fixing conspiracy to begin with, as judged under ordinary pleading standards. The District Court was correct in saying so.

Finally, citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), the plaintiffs contend that "[i]t could not be expected that at this stage [they] would have more information regarding what [d]efendants knew about Allergan's concealed impropriety." (Appellants' Opening Br. at 18.) But this contention too misses the mark. The deficiency in the plaintiffs' pleading was the lack of factual allegations plausibly suggesting Allergan actually engaged in any misdeeds (*i.e.,* there was nothing for the defendants to know), not that the plaintiffs insufficiently alleged the defendants' knowledge of the supposed misdeeds.

In short, the District Court properly concluded that the plaintiffs failed to adequately allege the existence of the price-fixing conspiracy that underlies the complained-of breaches of fiduciary duty. That failure defeats each of the plaintiffs' claims.[12]

---

[12] Beyond that failure, the District Court also held that the plaintiffs failed to adequately allege that either Allergan or the Director Defendants were fiduciaries of the Plans, and dismissed all claims against them on that basis. The plaintiffs expressly state that they "do not contest" the Court's dismissal of Allergan, (Appellants' Opening Br. at 6 n.1,) but do not address the Director Defendants' dismissal on that basis. By that omission, the plaintiffs have forfeited their right to challenge that aspect of the District Court's decision on appeal.

## B. Leave to Amend[13]

The plaintiffs also argue that the District Court abused its discretion by denying them leave to file an amended complaint and dismissing their claims with prejudice. More specifically, they say that the District Court was wrong to view their complaint as the fourth attempt to state a claim and that

Accordingly, we will also affirm Allergan's and the Director Defendants' dismissal with prejudice, as well as the dismissal of Count Three, which was pled only against those defendants, on the ground that none of those defendants are Plan fiduciaries under ERISA.

[13] "[W]e review a Rule 15 motion for leave to amend a complaint for abuse of discretion[.]" *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 248 (3d Cir. 2016). "We are mindful that the pleading philosophy of the Rules counsels in favor of liberally permitting amendments to a complaint." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629 (3d Cir. 2013) (citation omitted). But, "[s]tanding in tension with the long-standing amendment rule is our longer-standing rule that, to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) (citation omitted). Ultimately, a motion to amend is committed to the "sound discretion of the district court." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

17

they "should not be precluded from the possibility of being afforded at least one opportunity to cure the pleading deficiencies outlined by the District Court in its opinion." (Appellants' Opening Br. at 50.) We agree that the complaint at issue should not have been viewed as the "fourth" attempt at presenting a viable pleading.[14] But the Court did not actually deny leave to amend on that basis. It articulated a different reason for denying leave, namely that the plaintiffs had failed to identify what modifications they proposed to make to their complaint. That was true. Despite the flaws pointed out by the defendants in the motion to dismiss and associated briefing, the plaintiffs gave no hint as to how they would further amend their complaint.[15] In light of that, we cannot say the District Court abused its discretion in denying leave to amend.

The District Court analyzed the plaintiffs' request for leave to amend as follows:

[14] The plaintiffs' previous three complaints were a function of this case originating as two separate lawsuits that were eventually consolidated, not incremental attempts to resolve identified deficiencies. None of the three prior complaints were subject to challenge by a dispositive motion.

[15] The plaintiffs' request merely consisted of statements that "[m]ost courts navigating the post-*Dudenhoeffer* world have been relatively lenient about allowing plaintiffs to file amended complaints where they have fallen short of satisfying *Dudenhoeffer*'s difficult pleading standard[,]" and "[i]n this Court, dismissal is frequently granted without prejudice to the filing of an amended complaint." (App. 138.)

18

Although [p]laintiffs have requested to amend their Consolidated Complaint if [d]efendants' motion is granted, a review of this matter's procedural history shows that, collectively, [p]laintiffs have now filed four complaints. There is nothing to suggest that providing another opportunity to amend the pleadings would be beneficial or result in a different outcome. *See, e.g., Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) ("[B]ecause Plaintiffs' request was perfunctory and did not point to any additional factual allegations that would cure the complaint, the district court did not abuse its discretion in denying a motion to amend."); *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 12- 2652, 2017 WL 82391, at *20 (S.D.N.Y. Jan. 6, 2017) (denying leave to amend where the request was cursory and failed to indicate how the complaint's defects would be cured).

(App. 19 n.11.)

Although the Court noted the number of complaints filed in this case, its *ratio decidendi* for denying leave was the plaintiffs' failure to explain how they proposed to further revise their complaint.  Again, the record supports that reasoning, and the legal authorities relied on by the Court particularly highlight its focus on the inadequacy of the request for leave to amend.

To the extent the plaintiffs argue that they should be permitted to amend because other antitrust and securities

19

litigation cases against Allergan, which also are premised on the Company's participation in a price-fixing conspiracy, have survived motions to dismiss, we disagree for two reasons. First, the complaints in those cases contained far more robust factual allegations regarding Allergan's participation in an unlawful conspiracy. *See In re Allergan Generic Drug Pricing Sec. Litig.,* No. 2:16-cv-09449-KSH-CLW, 2019 WL 3562134, at *6 (D.N.J. Aug. 6, 2019) ("The complaint alleges both direct and indirect evidence of an agreement. For example, plaintiffs point to communications between executives of different companies regarding price increases, at least two of whom pleaded guilty to violating antitrust laws. Plaintiffs also point to various opportunities to collude, including a host of communications and various trade association meetings; relevant market conditions and attributes; and the timing of parallel price increases."); *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 420-35 (E.D. Pa. 2018) (detailing extensive allegations regarding price increases, government investigations, market conditions, and opportunities to conspire).

Second, and perhaps of greater significance, the complaints in those cases were available to the plaintiffs before they filed their opposition to the motion to dismiss in late-March 2018. So too was the public information that many of the allegations in those other complaints were derived from, including, in particular, the widely publicized price-fixing civil lawsuit commenced by a group of several state attorneys general against Allergan and other generic-drug manufacturers. The plaintiffs could have, and should have, availed themselves of those sources of information, especially in light of their admitted understanding that those sources were relevant to their claims. (*See* App. 23 n.2 (statement in

20

complaint that "[a]ll allegations contained herein are based upon … the investigation of [p]laintiffs' counsel. Plaintiffs through their counsel reviewed, among other things … other lawsuits against Allergan … [and] public statements and media reports[.]").) They didn't, nor did they refer to them when asking the District Court to let them amend.

We do not ask district courts to be mind readers but have instead recognized repeatedly that a district court does not abuse its discretion by denying leave to amend when the party seeking leave does not attach a draft amended complaint to its request.[16] *E.g.*, *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013); *DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 251 (3d Cir. 2012); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-53 (3d Cir. 2007). The plaintiffs here not only failed to include a draft complaint with their request for leave, they failed to say anything at all about how they intended to amend their pleading.[17] Given the complete lack of information from the plaintiffs to aid the District Court in its assessment of their request to file another amended complaint,

---

[16] To be clear, however, we are neither adopting nor endorsing the view that the converse is also true. Said differently, by recognizing that a district court acts within its discretion when it denies leave to amend where no proposed amendment is included in the request we do not mean to imply that a court necessarily abuses its discretion by allowing a party to amend without having submitted a proposed amendment.

[17] The plaintiffs' briefing on appeal similarly is devoid of any explanation as to what additional facts or theories they would include in an amended pleading.

21

we cannot say that the Court acted outside the bounds of its sound discretion in denying that request.

## III.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal of this case and the denial of the plaintiffs' request for leave to amend.