**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2977

_____

IN RE VIATRIS INC. SECURITIES LITIGATION


Eastern Atlantic States Carpenters Pension Annuity and Health Funds, (EASC),
Appellant

v.

VIATRIS INC., MICHAEL GOETTLER, and RAJIV MALIK

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 2:23-cv-00812)
District Judge:  Honorable Marilyn J. Horan

_____

Argued September 10, 2025

_____

Before: HARDIMAN, KRAUSE, and CHUNG, *Circuit Judges*

(Filed: November 6, 2025)

Colin J. Callahan
Flannery Georgalis
436 Seventh Avenue
Koppers Building, Suite 2100
Pittsburgh, PA 15219

Jan Messerschmidt                    **ARGUED**
Brendan R. Schneiderman
Steven J. Toll
Cohen Milstein Sellers & Toll

1100 New York Avenue NW
West Tower, Suite 800
Washington, DC 20005

Christina D. Saler
Cohen Milstein Sellers & Toll
100 N 18th Street
Suite 1820
Philadelphia, PA 19103
        *Counsel for Appellants Eastern Atlantic States Carpenters Pension Annuity and Health Funds, (EASC)*

Sheryl S. Bassin
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas
40th Floor
New York, NY 10019

Steffen N. Johnson                    **ARGUED**
Wilson Sonsini Goodrich & Rosati
1700 K Street NW
5th Floor
Washington, DC 20006

Nina F. Locker
Betty C. Rowe
Evan L. Seite
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
        *Counsel for Appellees Viatris, Inc., Michael Goettler, and Rajiv Malik*

David A. Strassburger
Strassburger McKenna Gutnick & Gefsky
444 Liberty Avenue
Suite 2200, Four Gateway Center
Pittsburgh, PA 15222
        *Counsel for Appellee Viatris Inc.*

OPINION*

CHUNG, Circuit Judge.

Eastern Atlantic States Carpenters Pension Annuity and Health Funds ("EASC") appeals the District Court's order dismissing its Amended Class Action Complaint (the "Complaint") alleging that investors were misled by statements made by Defendants Viatris Inc., Michael Goettler, and Rajiv Malik (collectively, "Viatris").[1] Because the Complaint does not plausibly allege that any of the challenged statements are materially misleading by omission, we will affirm.

I.    BACKGROUND[2]

Viatris was formed on November 16, 2020 through a combination of Mylan N.V. and Upjohn Inc. Goettler was Viatris's Chief Executive, Malik was Viatris's President, and both served as Directors since its inception.

Viatris touted itself as a "new kind of global healthcare company," developing and selling a variety of pharmaceuticals, including brand-name drugs, generics, complex generics, and biosimilars. From its first 10-K filing for the year ending December 2020, and in later SEC filings, Viatris disclosed to investors that it was engaged in integration

---

*      This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1]      As the identity of each speaker in this case does not matter for its resolution, we will refer to the Defendants collectively.

[2]      Because we write for the parties, we recite only the facts pertinent to our decision.

and restructuring activities, and would consider various strategic transactions, including divestitures, that "may be material both from a strategic and financial perspective." A288–89. Viatris cautioned that these transactions "could reduce the size or scope of [its] business." A289. And, on a February 22, 2021 guidance call, Viatris reminded investors that it had "implemented a multiyear global restructuring initiative intended to ensure that [it] … is optimally structured to sustainably achieve [its] Board mission." A317–18.

On March 1, 2021, the first day of the class period, Viatris held its inaugural Investor Day event. On this call, Defendants represented that Viatris's biosimilars strategy was "a core part of [its] forward looking … portfolio," A106, and stated that it was "'committed' to its 'focus on biosimilars,'" A108 (emphasis omitted). But they reminded investors that they "expect[ed] to begin [their] strategic planning exercise over the next coming months." A333. They explained that Viatris was "on a multiyear journey to transform [the] company." A323. Thereafter and until the last alleged misleading statement was made on December 1, 2021, Defendants touted Viatris's strength in biosimilars to investors. See, e.g., A522 (August 9, 2021) ("[W]e see our biosimilars portfolio driving continued growth … ."); A376 (Sept. 10, 2021) ("Biosimilar[s] is and will continue to be an important area for the company and will be a key growth driver, a key driver for our future growth."); A539 (Nov. 8, 2021) ("We are pleased with the continued growth of our global biosimilars portfolio this quarter, which grew by 14% and helped to offset anticipated competition related to select complex generics products.").

4

While Defendants made statements extolling Viatris's biosimilars business and Viatris's commitment to it, they continued to direct investors to the statements made in their SEC filings during this same time period and further disclosed that Viatris was engaging in a "rigorous bottom-up strategic planning effort" designed to "better understand[] how [its] portfolio will evolve over the next several years," and that this effort involved "looking at all the strategic levers at [its] disposal." A522 (August 9, 2021); see also A514 (May 18, 2021) (explaining that Viatris was engaged in "bottom-up work" and a "strat[egic] plan[ing] process" to enable it to meet long-term targets and that this would "take[] time"); A372 (Sept. 10, 2021) ("That brings me to the strategic planning process. We're making good progress with that. It's a thorough bottom-up strategic planning effort[] to really understand how our portfolio will evolve over the next several years. We're looking at all the strategic levers, and I'm looking forward to sharing that when the work is completed … .").

On February 28, 2022, at Viatris's Investor Day event, Defendants announced that Viatris's biosimilars business would be sold to Biocon Biologics, Inc. ("Biocon"). Viatris also filed a Form 8-K that day revealing that on October 26, 2021, Viatris and Biocon had entered into a Confidentiality Agreement. Defendants told investors that the initiative followed a "thorough strategic review of [its] entire business" to "determine[] what was core and what was noncore to the future of [the] company." A476. They explained that they were unveiling "a significant global reshaping initiative" and that the "Biocon biosimilar announcement is only the first-but-critical step to unlock value and reshape Viatris." Id. On this news, Viatris's common stock fell $3.53 per share, or 24.28

5

percent.

The Complaint was filed on October 23, 2023, and asserted violations of Section 10(b) of the Securities Exchange Act of 1934 against all Defendants, and Section 20(a) of that Act against Goettler and Malik. EASC alleged that during the class period, Defendants made material misstatements by omission in their SEC filings, investor conferences, and calls with investors, regarding Viatris's commitment to biosimilars ("biosimilars statements").[3] Defendants moved to dismiss the entire Complaint for failure to state a claim upon which relief could be granted, and the District Court granted their motion on September 20, 2024.

On appeal, EASC argues that the District Court erred in concluding that the biosimilars statements alleged to be fraudulent were not actionable and abused its discretion by failing to grant EASC leave to further amend the Complaint.

II.    DISCUSSION[4]

---

[3]    In its Complaint, EASC challenged three categories of statements. The District Court concluded that the Complaint failed to state a claim as to any of these categories. On appeal, EASC challenges only statements within the second category, "Viatris's commitment to biosimilars as its key growth driver and core part of [Viatris's] long-term strategy to offset inherent base business erosion," A142. The sixteen statements challenged on appeal are contained in Complaint paragraphs 143–145, 150, 160, 174–75, 186, 192, and 197. Op. Br. at 1 n.2. Using the District Court's numbering system, these are Statements 4–8, 11, 18, 35, 37, 38, 48, 54–55, and 57–58. Id.

[4]    The District Court had jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa. We have jurisdiction under 28 U.S.C. § 1291.

We review *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). In re Allergan Erisa Litig., 975 F.3d 348, 353 n.9 (3d Cir. 2020). "In conducting such a review, we take as true all the factual allegations of the ...

A. The Complaint Does Not Plausibly Allege Any Materially Misleading Statements

1. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." In re Allergan Erisa Litig., 975 F.3d 348, 353 n.9 (3d Cir. 2020) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Santiago, 629 F.3d at 128).

To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must first "establish that defendant made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997). Because this is a securities case, plaintiffs must additionally meet the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA"). "[U]nder 15 U.S.C. § 78u-4(b)(1), the complaint must specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all

_____

Complaint and the reasonable inferences that can be drawn from them, but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (internal quotations and citations omitted). We may affirm for any reason supported by the record. Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).

7

facts supporting that belief with particularity." Institutional Invs. Grp. v. Avaya, Inc., 564 F.3d 242, 252–53 (3d Cir. 2009) (internal quotations and citations omitted).

2. Analysis

EASC contends the biosimilars statements were misleading by omission because Viatris assured investors it was committed to biosimilars "without disclosing that [it] was conducting a 'thorough strategic review' in which Defendants were actively and seriously considering whether biosimilars was a 'core' or 'noncore' part of the business," A147, ¶ 146; A150–51, ¶ 151; A155–56, ¶ 161; A171–72, ¶ 180; A176–77, ¶ 187; and for later statements, "without disclosing that Viatris had 'now finished or almost finished'" the review and "determined that biosimilars was not [] 'core'" and that "Viatris had concrete plans to sell its biosimilars business to Biocon Biologics," A180–81, ¶ 193; A183, ¶ 198.

We disagree. "To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." In re NAHC, Inc. Secs. Litig., 306 F.3d 1314, 1330 (3d Cir. 2002). EASC neither plausibly alleges that Viatris viewed biosimilars as noncore, nor that Viatris was seriously considering making biosimilars noncore, when it made the biosimilars statements. Rather, EASC cites later actions and statements from which their theory cannot be reasonably inferred: (1) the fact that Viatris stated in the February 2022 investor call that it spent the previous year engaged in strategic review and (2) the fact that it sold its biosimilars business in February 2022. While these facts support an inference that Viatris contemplated the status of biosimilars as noncore at *some* point in the preceding year, these facts do not support an inference that Viatris was not committed

8

to biosimilars on, for example, March 1, 2021 when five biosimilars statements were made (nor on any other day an alleged misrepresentation was made).[5] See id.; see also Handal v. Innovative Indus. Props., Inc., No. 24-2829, --- F.4th ----, 2025 WL 2922871, at *2 (3d Cir. Oct. 15, 20225) ("[W]here liability is based on allegedly false or misleading statements, the falsity inquiry must focus on whether each individual statement the plaintiff has identified was, as written or spoken and at the time the statement was made, actually false or misleading by omission.").

And in any event, Viatris's SEC disclosures cautioned that Viatris was conducting a comprehensive review of its business and specifically alluded to the possibility of material divestitures. Moreover, Viatris noted repeatedly on investor calls the extensive nature of the strategic planning exercise. These disclosures advised investors that it was "conducting a 'thorough strategic review.'" In addition, Viatris stated that it was evaluating *all* parts of its business, which in substance, disclosed that it was "actively and seriously considering whether biosimilars and other parts of the business were 'core' or

---

[5]    The closest EASC comes to stating a claim is arguing that Viatris "had concrete plans" to sell its biosimilars business, A189, when it made biosimilars statements in November and December 2021. Its factual support is again lacking. It cites the October 2021 Confidentiality Agreement, but that was merely a non-disclosure agreement that is insufficient to reflect "concrete plans." A189; see Emps.' Ret. Sys. of R.I. v. Williams Cos., 889 F.3d 1153, 1168 (10th Cir. 2018); Jackvony v. RIHT Fin. Corp., 873 F.2d 411, 415 (1st Cir. 1989); Taylor v. First Union Corp. Of S.C., 857 F.2d 240, 244 (4th Cir. 1988). EASC also cites an article, published on December 9, 2021, reporting that Viatris was in "advanced talks" to sell its biosimilars business to Biocon. A189. But that article was published after the alleged misrepresentations, was anonymously sourced, and lacked any indicia of reliability. See Institutional Invs. Grp. v. Avaya, Inc., 564 F.3d 242, 262–63 (3d Cir. 2009).

9

'noncore,' and whether [Viatris] should divest in those noncore assets." A173, ¶ 183. Considering the biosimilars statements together with these disclosures, the Complaint fails to plausibly allege that omitting EASC's preferred wording from its disclosures rendered Viatris's statements materially misleading. See In re Ocugen, Inc. Sec. Litig., 2024 WL 1209513, at *4 (3d Cir. 2024); see also Fan v. StoneMor Partners LP, 927 F.3d 710, 716 (3d Cir. 2019).

Because we conclude that the Complaint does not plausibly allege that the challenged statements were materially misleading by omission, we will affirm the dismissal of both its Section 10(b) and Section 20(a) claims.[6]   Avaya, Inc., 564 F.3d at 280.

B.      The District Court Did Not Abuse Its Discretion By Denying EASC Leave to Amend

While Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave to amend shall be freely given where justice so requires," leave may be properly denied on certain grounds, including "futility." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434 (citation modified). We review a district court's denial of leave to amend for abuse of discretion. Id. We "have … recognized repeatedly that a district court does not abuse its discretion by denying leave to amend when the party seeking leave does not attach a draft amended complaint to its request." In re Allergan Erisa Litig., 975 F.3d at

---

[6]      We thus need not reach the issues of whether Defendants are entitled to the PSLRA "safe harbor" or whether the statements were otherwise non-actionable as accurate, puffery, or statements of opinion.

10

358.

EASC contends that the District Court improperly dismissed the Complaint without granting its request for leave to amend. However, EASC did not attach a draft amended complaint to its request for leave to amend, nor even explain—either in its briefing before the District Court or in its appeal—how it intends to amend its pleading to state a plausible claim. See id. ("The plaintiffs here not only failed to include a draft complaint with their request for leave, they failed to say anything at all about how they intended to amend their pleading."). Accordingly, the District Court did not abuse its discretion in denying EASC leave to amend.

III.    CONCLUSION

For the reasons set forth above, we affirm.