**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 25-1134

———————————

YOUNG CHO, individually and as representative of a class of similarly situated persons,
and on behalf of the Prudential Employee Savings 401(k) Plan,
Appellant

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; PRUDENTIAL
INVESTMENT OVERSIGHT COMMITTEE; BELLWETHER CONSULTING LLC;
LUCIEN ALZIARI; SARA BONESTEEL; GARY NEUBECK; SCOTT SLEYSTER;
SHARON TAYLOR

———————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:19-cv-19886)
District Judge: Honorable Jamel K. Semper

———————————

Submitted under Third Circuit LAR 34.1(a)
December 11, 2025

———————————

Before: KRAUSE, PHIPPS, and FISHER, *Circuit Judges*

(Filed: January 9, 2026)

———————————

OPINION[*]

———————————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

KRAUSE, *Circuit Judge*.

Plaintiff-Appellant Young Cho brought a putative class action against Defendants-Appellees the Prudential Insurance Company of America, the Prudential Investment Oversight Committee (IOC), and the IOC's individual members[1] (collectively, Prudential) under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. Cho, a former employee who participated in the employer-sponsored defined contribution retirement plan offered by Prudential (the Plan), contends that Prudential breached its fiduciary duty and failed to monitor its own fiduciaries as a consequence of "deficiencies in [Prudential's] investment monitoring process and resulting imprudent decisions." Opening Br. 2. The District Court granted summary judgment in favor of Prudential, concluding that Cho "failed to raise a triable issue of fact as to whether [Prudential] engaged in a prudent process in reaching [its] investment decisions." *Cho v. Prudential Ins. Co. of Am.*, No. 19-cv-19886, 2024 WL 5165459, at *7 (D.N.J. Dec. 19, 2024). Discerning no error, we will affirm.

## I. DISCUSSION[2]

### A. Prudential Satisfied the Duty of Prudence Required Under ERISA

Cho argues that Prudential's "fiduciary process was neither sufficiently independent nor grounded in appropriate, objective data to demonstrate prudence as a

---

[1] The individual IOC members named in the Third Amended Class Action Complaint are Lucien Alziari, Sara Bonesteel, Gary Neubeck, Scott Sleyster, and Sharon Taylor.
[2] The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), (f). We exercise appellate jurisdiction under 28 U.S.C. § 1291. Our review of an order granting summary judgment "is plenary, meaning we review anew the District Court's

2

matter of law." Opening Br. 18. He points to various purported "deficiencies" in Prudential's investment monitoring process and its resulting investment decisions in five funds to support his contention that a genuine dispute of material fact exists as to the "reasonableness of [Prudential's] fiduciary decision-making." Opening Br. 2, 18. We are not persuaded.

ERISA requires fiduciaries to employ "appropriate methods to investigate the merits of [an] investment" and "engage[] in a reasoned decision[-]making process, consistent with that of a 'prudent man acting in [a] like capacity.'" *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 420 (4th Cir. 2007) (first quoting *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 86 (2d Cir. 2001); then quoting 29 U.S.C. § 1104(a)(1)(B)). Once investment decisions are made, ERISA imposes "a continuing duty to monitor [those] investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015).

This duty of prudence is "a process-driven obligation," *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 213 (6th Cir. 2024), *petition for cert. filed*, No. 24-1030 (U.S. Mar. 26, 2025), so we must "focus[]" our inquiry on the "fiduciary's conduct in arriving at an investment decision . . . and ask[] whether [the] fiduciary employed the appropriate methods to investigate and determine the merits of a particular

---

summary judgment decision[], applying the same standard it must apply." *Ellis v. Westinghouse Elec. Co., LLC*, 11 F.4th 221, 229 (3d Cir. 2021). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144 (3d Cir. 2023) (quoting Fed. R. Civ. P. 56(a)).

investment" at the time the fiduciary acted, *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996). Because this standard is "flexible," *id.*, we do not assess the prudence of a fiduciary against "a uniform checklist," *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014), or "from the vantage point of hindsight," *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 918 (8th Cir. 1994) (citation modified). Rather, "we focus on the fiduciary's real-time decision-making process," *Johnson*, 122 F.4th at 213 (citation modified), and give "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise" and the "difficult tradeoffs" inherent in every investment decision, *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022); *see Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 10 (1st Cir. 2018).

Here, the IOC engaged an external professional investment consultant, Bellwether Consulting LLC (Bellwether), which it had used since 2001, to identify investment options, to conduct due diligence, to evaluate and monitor the performance of existing investments, and to provide guidance to the IOC on its fiduciary responsibilities. The IOC met on a quarterly basis to independently assess the Plan's portfolio of investments, and during those quarterly meetings, the IOC actively discussed portfolio performance with Bellwether and Prudential's internal Employee Benefits Investment (EBI) Team, which evaluated and monitored investments and made recommendations to the IOC. Together, the IOC, Bellwether, and the EBI Team reviewed any investments warranting additional scrutiny or removal from Prudential's portfolio due to subpar performance. And in advance of these quarterly meetings, the IOC members received substantive briefing that was curated by Bellwether and the EBI Team and consisted of summaries of

4

prior meetings, investment performance reports, and other background information, such as fee structures or summaries of discussions with fund managers, to assist the IOC in making investment decisions.

This process, as the District Court correctly concluded, was adequate to satisfy the duty of prudence imposed on fiduciaries by ERISA. Indeed, "appointing an independent fiduciary, seeking outside legal and financial expertise, holding meetings to ensure fiduciary oversight of the investment decision, and continuing to monitor and receive regular updates on the investment's performance" are hallmarks of a prudent investment process. *Tatum*, 761 F.3d at 358 (collecting cases). And although the duty of prudence requires more than "a pure heart and an empty head," *DiFelice*, 497 F.3d at 418, "courts have readily determined that fiduciaries who . . . appropriately investigate the merits of an investment decision prior to acting," as Prudential did here, "easily clear this bar," *Tatum*, 761 F.3d at 358.

**B.    Cho's Arguments to the Contrary Are Unpersuasive**

Each of Cho's attempts to undermine the adequacy of Prudential's investment process fails to create a genuine dispute of material fact as to the breach of a fiduciary duty.

*First*, Cho contends that Prudential's reliance on Bellwether—which he claims "was not truly independent from the IOC" because "Bellwether was founded by former Prudential employees [and] engaged without a competitive bidding process," Opening Br. 21, 30—demonstrates its lack of prudence and that the District Court "erred in finding that merely engaging and receiving information and recommendations from Bellwether

5

*ipso facto* confers prudence on [Prudential's] fiduciary process," Opening Br. 27. This argument is unconvincing.

We have "encourage[d] fiduciaries to retain the services of consultants when they need outside assistance to make prudent investments," so long as they "review the data a consultant gathers, to assess its significance and to supplement it where necessary." *Unisys*, 74 F.3d at 435. Here, the IOC reviewed Bellwether's recommendations on a routine basis before finalizing investment decisions, and the EBI Team—an internal group of investment professionals at Prudential that performed quantitative and qualitative assessments of the Plan's investments—met with Bellwether at least once every other week to scrutinize its analyses and recommendations and to confer on upcoming investment decisions. The IOC also independently "discuss[ed] fund performance compared to benchmarks and evaluate[d] investments placed on the Plan's watch list due to performance or other concerns, examining underlying factors driving that performance and why each investment should remain or be removed." App. 111. Thus, there is no indication that Prudential "passively accepted its consultant's positive appraisal . . . without conducting the independent investigation that ERISA requires." *Unisys*, 74 F.3d at 436; *see Falberg v. Goldman Sachs Grp., Inc.*, No. 22-2689, 2024 WL 619297, at *3 (2d Cir. Feb. 14, 2024) (affirming grant of summary judgment where "[t]he Committee's independent advisor continually monitored and evaluated the Plan's investment options, and provided the Committee members with detailed information,

including monthly and quarterly performance reports" and where "Committee members reviewed those reports prior to attending Committee meetings" (citation modified)).[3]

*Second*, Cho argues that Prudential's investment process was not prudent because the discussion of certain investment decisions at the IOC's quarterly meetings "were typically limited to five-to-ten minutes" and the briefing books prepared by Bellwether were "typically," though not always, "received a week in advance" of the IOC Meetings. Opening Br. 33-34. But the record tells a different story. Sara Bonesteel, an investment professional at Prudential with over 30 years of investment experience, stated that before each quarterly meeting she spent "a considerable amount of time reviewing materials that [the IOC] receive[d] related to [its] oversight of Plan investments," App. 1531, met with

---

[3] Instances of a fiduciary's process having been found insufficient and, thus, imprudent include, for example, where (1) an investment committee decision "was made with virtually no discussion or analysis and was almost entirely based upon the assumptions of those present and not on research or investigation," *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 358 (4th Cir. 2014); *id.* (finding that there was "no evidence that the [investment committee] ever considered an alternative"); (2) "the record did not show that even one director, let alone a majority, sought independent information on the fair market value of the stock," *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 638 (7th Cir. 2005) (citation modified); (3) a fiduciary relied on an investment appraisal prepared 13-20 months before the transactions and had failed to consider significant changes in the "facts and assumptions" about the company's business condition that occurred in the interim, *Donovan v. Cunningham*, 716 F.2d 1455, 1469, 1474 (5th Cir. 1983); (4) fiduciaries "passively received a rosy superficial picture of the [company in which they caused the plan to invest] and its holding company from persons with an interest in obtaining their approval[, and n]o effort was made to obtain independent professional assistance or analysis of the financial data presented to them," *Katsaros v. Cody*, 744 F.2d 270, 275 (2d Cir. 1984), and (5) the fiduciary relied on a valuation by an advisor who had valued the wrong company and who testified that, if he had been told that his valuation would be used for an employee stock ownership plan transaction, he would have done a different evaluation, *Chao v. Hall Holding Co.*, 285 F.3d 415, 429-37 (6th Cir. 2002). None of these circumstances are present here.

Bellwether and EIB Team members in advance of those meetings to provide them "feedback on areas [she] would like additional color on," App. 1531, and considered Bellwether's recommendations "pressure-test[ed]" and "challenge[d]," App. 1532. Other declarants provided similar descriptions of the IOC process and its quarterly meetings. There is no indication that these IOC members did not receive the relevant briefing materials from Bellwether sufficiently in advance of the quarterly meetings to rely on them before finalizing their investment decisions. Lastly, the record admittedly reflects that some meeting agenda items were allocated five to ten minutes, but others were allotted lengthier discussion time, *e.g.* between 25 and 50 minutes, for proposals to change Plan investments or to receive a "Report from [the] Plans' Chief Investment Officer," the latter of which did not have any written time limitation. *See, e.g.*, App. 2037, 2040, 2043, 2046, 2049.

*Third*, Cho claims that Prudential appointed members to the IOC without "ensur[ing] they were qualified." Opening Br. 41. In refusing to accept this argument, the District Court had before it declarations of Prudential's investment professionals who stated that they collectively had decades of investment-related experience, received fiduciary training upon joining the IOC, and had access to ERISA counsel. And even though the training of Prudential's investment professionals could, in theory, be more rigorous or demanding, we are not persuaded that the record demonstrates a genuine dispute whether Prudential's investment professionals' conduct fell below the requisite "care, skill, prudence, and diligence" that would be expected of them under ERISA. 29 U.S.C. § 1104(a)(1)(B); *see DiFelice*, 497 F.3d at 417-18.

8

*Fourth*, Cho characterizes as "imprudent" the retention of certain of the Plan's "proprietary and affiliated" investments (the Challenged Funds[4]), Opening Br. 11, 49, because Prudential purportedly had a "preference for [its] own affiliated investment products," which "constitutes independent evidence of a deficient monitoring process that gave Prudential-affiliated products an inside track to obtaining Plan assets and resulting revenues," Opening Br. 48. But, as the District Court found, the IOC evaluated, selected, and monitored each of the Challenged Funds based on the same criteria and using the same process as the non-affiliated funds available in the Plan. It also received the same "independent advice regarding investment decisions" from Bellwether and the EBI Team and "consistently deployed a thorough investigative process before adding *any* fund— Prudential-affiliated or not—to the Plan." *Cho*, 2024 WL 5165459, at *9 (emphasis added).

In short, we see no reason to disturb the District Court's careful analysis and conclusions that "the IOC engaged in a robust process for selecting and monitoring" investments and that the "record evidence confirms generally positive performance for the [C]hallenged [F]unds as compared to benchmarks." *Id.* at *13.[5]

---

[4] The Challenged Funds are the (1) Wellington Trust Company CIF II Diversified Inflation Hedges Portfolio, (2) Prudential High Yield Collective Investment Trust, (3) Prudential Retirement Real Estate Fund, (4) Jennison Opportunistic Equity Collective Investment Trust, and (5) Wells Capital International Bond Institutional Select Fund.

[5] Given the absence of a genuine dispute as to any material fact regarding whether Prudential breached its fiduciary duty under ERISA, we need not resolve Cho's failure-to-monitor claim, because whether a "monitoring claim survives depends on whether [the] underlying breach of fiduciary duty . . . claim[] survive[s]." *In re Allergan ERISA Litig.*, 975 F.3d 348, 354 n.11 (3d Cir. 2020).

**II. CONCLUSION**

For the foregoing reasons, we will affirm.